L. G. DEURAN V. THE STATE.

No. 18225.   Delivered May 6, 1936.

The opinion states the case.

*Wright, Tupper & Tupper,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was convicted of the offense of murder without malice, and his punishment was assessed at confinement in the state penitentiary for a term of five years.

The record shows that early in the morning of the day of the alleged homicide appellant and C. M. Jones passed through the little town of Melvin in McCulloch County on their way to San Angelo. When they arrived at Brady Creek they noticed that the water was too high for them to cross in an automobile. They went back to the town of Melvin where they, for the first time, met Corbell, Johnson, and Baumgarten at a filling station. While at the filling station they all engaged in a game of dice in which Corbell and Johnson lost some money.

When the game ended, appellant and Jones again drove to the creek expecting to be able to cross at that time, but the water was still too high. They found several cars and trucks parked in the road waiting for the water to recede. In a very short time Baumgarten and Turner came, and soon thereafter Corbell and his companion, Johnson, came. Corbell testified for the State that from a certain point they observed a number of cars and trucks at the crossing on Brady Creek; that they went there to see if they could be of any assistance to persons who wished to cross; that while at the crossing Corbell, the witness, and appellant made a bet on the result of a wrestling match between Johnson and Jones; that Johnson threw Jones twice, but appellant declined to pay the amount of the wager; that this brought about an argument which resulted in a fight between appellant and Johnson; that Johnson was struck on the head with a large pistol, fracturing his skull, and from the effects of which he died in a very short time.

Appellant's version of the affair is that when Baumgarten and Turner came down to the crossing, Baumgarten told them that Corbell and Johnson were coming; that they would have trouble with them unless they returned the money which they had won in the dice game; that when Corbell and Johnson arrived they asked Jones and appellant for another game; that this request was declined at first, but after some argument Jones agreed to engage in a game with Corbell; that when he had lost to Corbell what money he had won at the filling station he quit; that Johnson then told appellant to get in the game with Corbell and give him a chance to win his money back, or to return to Corbell the money he had won; that unless he did so, he would whip him; that Jones then told Johnson that ap-

pellant was not in a condition to fight as he had been sick and was weak; that Johnson then said to Jones that there seemed to be nothing wrong with him, whereupon Jones agreed to fight Johnson a fist fight. In this fight Johnson knocked Jones down, stamped him with his feet, and Corbell kicked him. Jones then called to appellant to come take the man off of him as they were killing him. When appellant responded to Jones' request Johnson and Corbell both began to strike him with their fist, and appellant then struck Johnson with a pistol without any intent to kill him. When the fight ended they left by way of another route to go to San Angelo, but were arrested before they had gone very far.

Appellant earnestly insists that under the foregoing state of facts he was entitled, in addition to a charge on self-defense, to a charge upon his right to defend Jones from death or serious bodily injury at the hands of deceased and Corbell or either of them. He objected to the court's charge because the court had failed to give such instruction. We do not believe that the appellant's contention is well founded for the reason that Jones agreed to fight Johnson a fist fight and consequently his right of self-defense was not available to him; and if Jones had no right of self-defense, then appellant had no right to act in defense of him. Appellant's right to act in defense of Jones depended upon whether Jones had a right of self-defense. Of course, if the appellant had not known that Jones voluntarily entered into a mutual combat with Johnson, then a different rule might apply. See Foreman v. State, 33 Texas Crim. Rep., 272 (276), 26 S. W., 212.

Bills of exception numbers one and two are in question and answer form without a certificate from the trial judge that it was necessary that they be in such form, and, therefore, under Art. 760, C. C. P., 1925, and the rule announced by this court in the case of Monday v. State, 124 Texas Crim. Rep., 44, we cannot consider the same.

By bill of exception number three appellant complains of the action of the trial court in permitting the witness Kimbrough to testify that it was his opinion that from a stated place mentioned by Corbell one could see trucks standing fifty yards from the crossing on Brady Creek. Appellant objected to said testimony because it was not shown that the witness had made a personal observation of the premises for the purpose of determining whether a truck could be seen at the crossing from the stated point. We think that the appellant's position is well taken. Corbell testified that he and deceased saw

some trucks and cars at the crossing from said stated point; that their purpose in going to the crossing was not to make appellant and Jones return unto them the money which they, Jones and appellant, had won in the game with dice or to whip them, but to assist persons who might wish to cross the creek. The opinion of the witness Kimbrough was offered in support of the testimony given by Corbell. It is obvious that, if Corbell and deceased could not see a truck at the crossing from a certain point as claimed by Corbell, then his testimony as to their purpose in going to the crossing to aid others might not appear very plausible to the jury.

By bill of exception number four appellant complains of the action of the trial court in permitting the district attorney to prove by Mrs. Johnson that the man Baumgarten, who told appellant that Corbell and deceased were coming to the crossing to take from them their winnings, had gone to the penitentiary. Appellant objected to this testimony because it was irrelevant and prejudicial. We must confess that we are unable to understand how it shed any light upon any issue or any fact in issue. It was not admissible to impeach and discredit Baumgarten because he was not a witness. That it was prejudicial seems to us to be obvious in that the jury may have concluded that if Baumgarten did tell appellant and Jones that Corbell and deceased were coming to take the money away from them or give them trouble, that such a statement was not true, and might in the opinion of the jury give some color of verity to the testimony of Corbell as to their purpose in going to the crossing over Brady Creek.

Bills of exception five and six relate to the action of the trial court in declining to instruct the jury upon appellant's right to act in defense of another which has already been herein disposed of adversely to appellant.

By bill of exception number seven appellant complains of the following argument by the district attorney: "C. J. Jones was employed in a drug store and was not a pharmacist and you know what he was selling"; to which appellant objected because it was an innuendo and assertion that the witness was selling whisky. He also, in due time, presented to the court a special requested instruction to the jury not to consider said argument, for any purpose, which the court declined to give. We think that the court in declining to give said requested charge committed error. The argument was not a legitimate deduction from any testimony; it was an insinuation which

312

tended to reflect upon the character of the witness, Jones, who had given material testimony in behalf of the appellant.

For the errors herein above pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.