## L. G. DEURAN v. THE STATE.

No. 19158.   Delivered January 26, 1938.
Rehearing denied April 27, 1938.

The opinion states the case.

*Wright, Tupper & Tupper,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for four years.

The opinion on a former appeal is reported in 130 Texas Crim. Rep. 308, 94 S. W. (2d) 181. It appears that the testimony adduced upon the present trial was substantially the same as that set forth in the opinion to which we have referred. Hence we deem it unnecessary to again make a detailed statement of the evidence.

Appellant's chief contention is that he should have been granted a new trial because of newly discovered evidence. It appears that Lester Wilkerson, the alleged newly discovered witness, was present at the scene of the homicide and would give testimony corroborating appellant's version of the transaction. Wilkerson had been subpoenaed by appellant in June, 1934; and in August, 1936, a subpoena issued at the instance of the State was duly served on him. Under the circumstances, it is doubtful whether appellant exercised proper diligence to obtain the testimony of the witness prior to the trial. Be that as it may, it is observed that Henry Fields and J. C. Jones both gave testimony corroborating appellant's version of the transaction. In Mr. BRANCH's Annotated Penal Code, Sec. 203, the rule is stated as follows: "As a general rule where it appears that had the proposed new witness testified on the trial his testimony would have been merely cumulative of that adduced on the trial, it affords no ground for granting a new trial as newly discovered testimony."

We are constrained to hold that the trial judge properly exercised his discretion in overruling the motion for new trial.

In bill of exception No. 2 appellant complains of the action of the court in omitting from the forms of verdict furnished the jury a blank form for murder without malice. The bill is qualified by the trial judge as follows: "That the several forms of verdicts as prepared by the court were submitted to attorney for defendant, in open court, before they were given to the jury together with the court's charge; and after examining said forms of verdicts defendant's attorney made no objection thereto, nor requested a form of verdict for finding of murder without malice." As qualified, the bill fails to reflect error.

Bill of exception No. 3 presents the following occurrence: The State proved, over appellant's objection, that Reuben Corbell, who was present at the difficulty, made this statement to

a bystander: "Get that car number; they have killed my partner." When this statement was made appellant was leaving the scene of the difficulty in an automobile. All of the evidence on the trial of the case showed that appellant had killed the deceased. Moreover, it was shown that appellant immediately left the scene of the homicide. Under the circumstances, if it should be held that the exclamation of the witness was not admissible as res gestae, we are unable to reach the conclusion that its reception in evidence was prejudicial to appellant.

We have confined our discussion to the matters stressed by counsel for appellant in oral argument. We have carefully examined the remainder of appellant's bills of exception and are constrained to hold that they fail to reflect reversible error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we were wrong in holding that the trial court committed no error in declining to grant a new trial on the alleged newly discovered evidence of Lester Wilkerson. It is contended that the new evidence would have contradicted the testimony of Jarrell Herring, a witness for the State.

The evidence seems to establish the fact that Johnson (deceased), Corbell, Jones and appellant engaged in a dice game in a garage in the town of Melvin while waiting for the water to recede at a road crossing on the creek. Johnson and Corbell lost to Jones and appellant in the dice game. The four parties met later at the crossing where numbers of people were held up by the high water. There is conflict in the evidence as to just what conversation occurred among them, but it shows that another dice game was had at the crossing, which either broke up in a fight, or was merged into a wrestling match between Jones and Johnson, which wrestling match ended in a fight. Herring and Wilkerson went to the crossing together, the two on one horse. As appellant directs his claim of the importance of the alleged newly discovered evidence at Herring's testimony particularly we quote his evidence in part, as follows: "When I first noticed these parties—Corbell and Jones, and Deuran and Johnson—they were all talking, but not so loudly. I

heard some of what they said. They were talking about whether they had seen each other before and were talking something about a rooster fight. They said where the rooster fight had been but I don't remember where they said. They were trying to find out whether they had met each other before and I think they had, the way they were talking. After that there was some going on and talking and they seemed to start arguing. While they were arguing they got up a bet. The bet was between Deuran and Corbell. They bet $5.00. The bet was made to see which one could whip or throw, I don't know just exactly, between Johnson and Jones. I don't remember if they put up any money; I didn't see any money, but Johnson and Jones started to wrestling and they got off kind of in a ditch and there was a little boy from some of the cars told them to stop them because they were getting into some wire. They then started them back in the road and Jones kicked at Johnson and Johnson knocked him down and got on top of him and was beating him in the face; then Jones said, 'I've got enough,' and Corbell said something about paying or getting pay for the bet and then Deuran hit the man Johnson with a gun. Johnson was in the road when Deuran hit him; Johnson was lying down. Corbell was just standing there and had caught Deuran by the arm and it was at that stage where they said something about collecting the bet. * * * Johnson and Jones were fighting when I saw Deuran with the gun. * * * I have testified that I saw Corbell take Deuran by the arm and wanted to collect the bet, but I didn't hear just what was said. * * * When I saw the defendant, Deuran, strike the deceased, Bill Johnson, with the gun I turned and started away. * * * That occurrence started out as a wrestle and ended up as a fight."

On cross-examination the witness said that Johnson knocked Jones down, jumped on him and was beating him. Further on cross-examination he testified: "I went down there to the crossing and got off of my horse and went up around where they were fighting, although it wasn't my fight."

Attached to appellant's motion for new trial was the affidavit of Lester Wilkerson which is as follows: "I was at Paint Rock, Texas, during the Deuran trial in February, 1937. Mr. Stroman the district attorney talked to me about what I knew. I was at the Barnett Crossing when the high water was there. On the sixth day of April, 1934, to be exact. Me and my cousin Jarrell Herring rode there on one horse. My cousin Jarrell Herring was by me when Whip Jones and Bill Johnson were fighting. They were not wrestling. Nothing was said about a rooster fight by Mr. Corbell and Mr. Deuran. I did not hear

Mr. Corbell and Mr. Deuran make a bet about a wrestling match; with Bill Johnson and Whip Jones. I was as close to them as my cousin Jarrell Herring. I could have heard it if they had made that bet. They were not wrestling but were fighting."

It is appellant's contention that Johnson and Jones were not wrestling, but were fighting. He criticizes our original opinion wherein we held that the proposed new evidence was cumulative to that given by the witnesses Fields and Jones, because the State had introduced evidence which might justify the jury in concluding that the two named witnesses were not present at the scene of the trouble. We note that two of appellant's witnesses' presence was not questioned.

Klukan testified that he was present at the scene of the trouble and heard some one say, "Let's start a dice game," which they did; that witness went back to his truck and "saw what seemed to be somebody scuffling; they fell down in the ditch alongside of the road and around in front of Smith's truck and I couldn't see what was happening there then. All of a sudden I seen a couple of men fall, and after that the next thing I heard somebody say, 'They've got guns.' * * * I never did see any fighting but I seen scuffling. * * * They must have been fighting when I seen the men fall. * * * My testimony before was that they were wrestling. They were wrestling and they both fell off in the ditch; they got up and patted each other on the back. * * * I seen the two men on the ground; they had been knocked down, it seemed like; they must have been fighting."

Smith testified that he was present at the crossing when parties were blocked by the high water; saw a crap game there, "a little wrestling and then the first thing you know I seen them fighting."

Reverting to Wilkerson's affidavit, it will be seen that he nowhere undertakes to say how the fight started. His affidavit goes no further than to say that nothing was said about a "rooster fight," and that he heard nothing about a bet on a wrestling match, and that the parties were not wrestling, but were fighting. Everybody concedes that the controversy wound up in a fight in which Johnson was killed by appellant.

The record does not disclose upon what theory the learned trial judge overruled appellant's motion for new trial in so far as it was based on claimed newly discovered evidence, but every presumption must be indulged that his action was correct unless the contrary is shown. In Branch's Ann. Texas P. C., page 128, Section 201, the rule supported by many cited cases is stated as

follows: "If it is clear that the proposed testimony which is claimed to be newly discovered would not likely change the result, a new trial sought on that ground is properly denied."

To the same effect is 31 Tex. Jur., page 261, Section 65, citing among recent cases, Nothaf v. State, 91 Texas Crim. Rep. 378, 239 S. W. 215; Hughes v. State, 121 Texas Crim. Rep. 604, 50 S. W. (2d) 824. We quote from 31 Tex. Jur., page 262, Section 66: "A motion for a new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the trial court. In view of the fact that motions on this ground are not favored, if the trial court has denied the defendant's application, its ruling will not be disturbed upon appeal unless it is apparent that the discretion was not exercised according to established rules of law—in other words, unless there is shown to have been an abuse of discretion which resulted in injustice to the defendant."

Having in mind the earnest insistence of appellant on the point under discussion we have again closely examined the entire statement of facts. In view of the record as we understand it the trial judge might with reason, and without any abuse of his judicial discretion, have reached the conclusion that if the absent witness had been present and testified to everything contained in his affidavit, such evidence was not such as would probably have changed the result, nor would it bring about a different result on another trial.

We are constrained to overrule appellant's motion for a rehearing, and it is so ordered.