Marvin Fuller v. The State.

No. 7037.   Decided June 20, 1923.

Rehearing denied October 17, 1923.

1.—Manslaughter—Deadly Weapon.

This court is not in accord with appellant that the character of the weapon used was such as would exclude the theory of murder.   This was a question of fact for the jury.

2.—Same—Evidence—Leading Question.

The question, "Tell the jury whether or not deceased had his hands open down by his side, and whether or not he hit, clinched, or struck the defendant," was not leading.

3.—Same—Evidence—Written Statement.

Where appellant complained of the receipt in evidence of a written statement, signed I. D. Fuller, and the only fact averred in the bill of exception as a reason for its exclusion is that the statements therein were not in contradiction of the testimony of the defendant while on the witness stand, there was no error in admitting the statement.

4.—Same—Rehearing—Mutual Combat—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue of mutual combat, there was no reversible error in the charge of the court submitting that issue.   Following Anthony v. State, 136 S. W. Rep., 1097.   Distinguishing Cotton v. State, 217 S. W. Rep., 158.

5.—Same—Evidence—Written Statement—Impeaching Witness.

There was no error in admitting the written statement of the witness Fuller for the purpose of impeaching said witness.

Appeal from the District Court of Van Zandt.   Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

*Wynne & Wynne*, and *Stanford, Sanders & West*, for appellant.— On question of deadly weapon, Lucas v. State, 90 S. W. Rep., 880; Miles v. State, 23 Texas Crim. App., 410.

On question of impeaching witness, Mealer v. State, 22 S. W. Rep., 142; Lewis v. State, 15 Texas Crim. App., 661.

*R. G. Storey*, Assistant Attorney General, for the State.   On leading question, Carter v. State, 59 Texas Crim. Rep., 75.

MORROW, PRESIDING JUDGE.—The offense is manslaughter; punishment fixed at confinement in the penitentiary for a period of two years.

Appellant killed Ohman Irwin. The weapon used was a wooden stick about two and one-half feet long and two and one-half inches in diameter. There was evidence that in the manner used, it was calculated to produce death, and the blow struck with it broke the skull of the deceased and killed him. Appellant was a young man about eighteen years of age and weighed one hundred and twenty-five pounds.

We are not in accord with the position taken by the appellant that the character of the weapon used was such as would exclude the theory of murder. The grade of the offense was, under the evidence, a question of fact. The instrument was not *per se* a deadly weapon, but there was evidence describing it and the manner in which it was used is adequate to support the finding of the jury that it was used in an attempt to kill and that it was a deadly weapon. See Merka v. State, 82 Texas Crim. Rep., 559.

To one of the eye-witnesses, this question was propounded: "Tell the jury whether or not deceased had his hands open, down by his side, and whether or not he hit, clinched or struck the defendant."

We do not think the question was leading; nor does the bill show error. There was no motion to withdraw the answer.

Appellant complains of the receipt in evidence of a written statement signed I. D. Fuller. The only fact averred in the bill as a reason for its exclusion is that the statements therein "were not in contradiction of the testimony of the defendant while on the stand in this case." There may be many contingencies under which a written statement is admissible in evidence upon the trial, and on appeal, unless the contrary is shown, it must be assumed, in support of the court's ruling admitting the statement, that the conditions under which it was offered justified his action. It appears that Fuller was a witness for the appellant and described the transaction in which the deceased lost his life. On cross-examination it was drawn out that he had made a written statement soon after the tragedy, which was sworn to. It was exhibited to him by counsel and his signature to it identified. The written statement was afterwards introduced in evidence, doubtless for the purpose of impeaching the witness. In his charge, the court told the jury in appropriate language that the statement could be used for no purpose other than to enable them to pass on the credibility of the witness. Unless the record shows the contrary, the presumption that the court correctly ruled in admitting the statement must prevail.

Discerning no error, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

October 17, 1923.

LATTIMORE, JUDGE.—We regret our inability to agree with appellant's earnest contention in his motion for rehearing that the learned trial court erred in submitting the law of mutual combat in the charge. All the cases cited by appellant in support of his contention have been again reviewed. Beginning with Gilliland v. State, 44 Texas, 356, this court has uniformly upheld the statement there made as to what constitutes a mutual combat. Logan v. State, 17 Texas Crim. App., 50; Lee v. State, 21 Texas Crim. App., 341; Thumm v. State, 24 Texas Crim. App. 667; Foreman v. State, 33 Texas Crim. Rep., 272; Anthony v. State, 62 Texas Crim. Rep., 138, 136 S. W. Rep., 1097. The charge of the court below in the instant case substantially follows these authorities. We do not think the language of the opinion in the case of Cotton v. State, 86 Texas Crim. Rep., 387, 217 S. W. Rep., 158, is in any conflict with these decisions.

Briefly reviewing the facts herein,—a quarrel between appellant and deceased took place on their way home from a neighborhood gathering. One told the other to wait at a certain gate and he would whip him. When the gate was reached the two, with several other boys, got down but did not fight. They all stayed together at this place for an hour or more. Finally, on some suggestion from the other boys that they were not going to fight, or that they had better settle it, according to witnesses, deceased said to appellant: "If you will take what I called you, I will take what you called me," to which appellant replied that he would do that until the next time he saw him. Appellant's statement is thus given by a witness: "If you will take what I said to you, I will take what you said to me and we will pass it up"—until the next time I see you." According to one witness, as they were separating at the gate, deceased said to appellant that the next time he saw him, he wanted to settle it. About one half mile from the gate mentioned the road forked, that of deceased going east, that of appellant north. When deceased and witness Kirby got to this fork they stopped and remained sitting on their horses until appellant and his brother came up in a buggy. What took place then is variously stated by the witnesses, there being substantial accord among those for the State. Kirby testified as follows:

"When Marvin Fuller and Iza drove up there, we were standing there, and Marvin stood up in his buggy and commenced pulling off his coat, and told Ohman if he was looking for anything, to get down, and Ohman told him he hadn't said anything about looking for anything and Marvin asked him to get down again, and I said, 'Get

down, Ohman,' and when I said that, Iza said 'Whenever he does, bust his brains out with the club,' and Marvin got out on this side of the buggy (indicating) and walked around his buggy to the other side and got the club and walked back to this side and about that time Ohman got down and they met about half-way—on half-way ground—and Marvin hit him.''

Thompson for the State testified as to what occurred at the time as follows:

''As I came up, the first thing I heard was Marvin telling Ohman to get down off the horse, that he wanted to hit him with the club; I just heard Marvin tell Ohman that one time. Ohman did not make any reply. Robert Kirby told Ohman to get down and not be a coward; he called Ohman 'Pretty Tom;' I did not hear Robert Kirby say that but once. I have heard Ohman called 'Pretty Tom' four or five times and I reckon it is a nick-name. Ohman did get down off his horse. Marvin was standing kinder to this side of the horse and Ohman got down on the other side; Ohman was standing in front front of his horse when Marvin struck him.''

On cross-examination by the defense this witness made the following statement:

''When I got there Marvin was already out of his buggy; Ohman was still on his horse; Marvin said 'Get down off the horse, I want to hit you with the club.' Ohman could see the stick. I could see the stick. Marvin had the stick down beside him in his right hand. Marvin wasn't by his buggy when I got there. Ohman got off his horse and walked around in front of it. Marvin was within three or four feet of the horse; he didn't move; Ohman walked around in front of his horse and Marvin hit him with the club.''

Mays for the State testified as follows:

''I don't remember the first thing that was said after I rode up to the place of the killing; after Marvin rode up, he got out of the buggy and took his club and walked up there and asked Ohman Irwin down off his horse and Ohman didn't say anything and Robert Kirby told Ohman to get down and show Marvin he wasn't afraid, and to get down, and when he said that Iza Fuller says 'When he does, knock him in the head with the club;' Iza was talking to Marvin; yes, Marvin knocked Ohman in the head with the club.''

On cross-examination witness made the following statement of the occurrence:

''He walked right up to Ohman; he got out and walked right straight up to Ohman and asked Ohman down; he says 'I want to hit you one lick with this club;' Ohman did not get down then; Robert Kirby told Ohman 'Get off, Pretty Tom, and don't be a coward.' Ohman then got down off his horse and came to where the defendant was standing; when he got within reach of the defendant, I could not see his hands for the horse; I paid no attention to his hands.

When he got within reach of the defendant, the defendant struck him with a stick."

Phillips for the State testified as follows:

"Marvin just invited Ohman down once——he just told him when he got out of the buggy if he wanted to settle it, to crawl off his horse. I don't know which hand Marvin had the stick in; he had it in his hand."

Another State witness testified that between the meeting at the gate and the subsequent meeting where the killing took place appellant provided himself with the stick with which he inflicted the fatal blow. These facts are so unlike those in Cotton v. State, supra, and Voight v. State, 53 Texas Crim. Rep., 268, 109 S. W. Rep., 205, and the other cases cited by appellant as to make the law of this case very different from the law applicable in those cases. The facts are more nearly in line with those in Lee v. State, Foreman v. State, and Anthony v. State, supra.

The understanding had between the parties at the gate was that while they did not fight at this place, the matter was merely postponed until they met the next time. Their next meeting was at the fork of the road where the killing took place. Immediately upon his arrival at the place as appears from the testimony of all the State witnesses, appellant not only announced his willingness and readiness to settle their difficulty but pulled off his coat, got out of his buggy, secured his stick and insisted upon deceased getting down from his horse and settling their difficulty. After some insistence on the part of appellant and other members of the party deceased got down from the horse and advanced toward appellant who thereupon struck him on the side of the head with the stick from the effects of which he later died. If this does not make out a case of mutual combat under the authorities, we are at a loss to know how one could be made out by testimony.

The written statement made by Iza Fuller, a defense witness, in the office of the county attorney soon after the difficulty, was sufficiently variant from the testimony of said witness as given orally on the trial of the case, to justify the learned trial judge in admitting said statement for purposes of impeaching the witness. Same was restricted to this purpose in the charge of the court.

Being unable to agree with appellant in either of the matters presented in his motion for rehearing, same will be overruled

*Overruled.*