Keith E. Jasmin, Jasmin & Remmel, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

**Larry Donnell NEWSOME, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–87–00276–CR.**

Court of Appeals of Texas,
Dallas.

May 8, 1989.

Rehearing Denied June 23, 1989.

Before LAGARDE, THOMAS and OVARD [1], JJ.

THOMAS, Justice.

A jury convicted Larry Donnell Newsome of aggravated sexual assault and assessed punishment, enhanced by one prior felony conviction, at life imprisonment. In an unpublished opinion, this Court held that the evidence was sufficient to support the conviction, but that the cause must be remanded for a hearing, in light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to determine whether the State discriminated when it used its peremptory challenges to excuse black veniremembers.[2] The record of the hearing has been forwarded to this Court for review as requested. Newsome has filed a supplemental brief, contending that the trial court erred when it denied his request to cross-

---

1. The Honorable John Ovard, Justice, succeeded the Honorable Joseph A. Devany, a member of the original panel, at the expiration of his term on December 31, 1988. Justice Ovard has reviewed the briefs and the record before the court.

2. *See Newsome v. State*, No. 05–86–00276–CR (Tex.App.—Dallas, March 7, 1988) (unpublished pursuant to TEX.R.APP.P. 90.).

examine the prosecutor. We agree. Consequently, we again abate this appeal and remand for a *Batson* hearing at which Newsome should be given an opportunity to cross-examine the State's witness.

At the *Batson* hearing in this cause, Newsome's attorney stated for the record that Newsome is black and that the prosecutor used five peremptory challenges to excuse black prospective jurors. He also pointed out other facts which might raise an inference of discrimination. After defense counsel spoke, the State informed the court, "We do have some questions of him." The court then went off the record. After returning to the record, the State did not again request permission to question defense counsel. At the court's request, the State and Newsome presented argument on whether Newsome had raised an inference of discrimination. The court concluded that Newsome had raised an inference of discrimination and asked the State to come forward with any neutral explanations for its use of the strikes.

The assistant district attorney who had participated in jury voir dire at the Newsome trial was called to the witness stand. He was questioned by another assistant district attorney. The allegedly neutral explanations were thus offered in a question and answer format. After the witness testified, the trial court posed two questions, asking generally for a reaffirmance of two of the reasons given for peremptory challenges. At the conclusion of this direct testimony, defense counsel asked to cross-examine the witness, but the trial court denied the request. Defense counsel objected to this prohibition against cross-examination as a denial of Newsome's right to a fair trial and to effective assistance of counsel.

The trial court, in its findings of facts and conclusions of law, concluded that Newsome had established a prima facie case of discrimination, but that the State had offered racially neutral reasons for its strikes. Thus, Newsome had failed to establish purposeful discrimination in the

State's use of its peremptory challenges. *See Batson,* 106 S.Ct. at 1723–24.

Newsome contends that cross-examination is a matter of right and is essential to a fair trial. In *Williams v. State,* 767 S.W.2d 872, 876–77 (Tex.App.—Dallas 1989, n.p.h.) (en banc), this Court held that a *Batson* movant has the right to question the prosecutor concerning his racially neutral reasons for striking minority veniremembers. Because Newsome was denied this right, we abate this appeal and remand this case so that Newsome may cross-examine the prosecutor with regard to the facially neutral reasons given at the first *Batson* hearing. This second hearing should be conducted in conformity with the procedures set out in *Williams.*

LAGARDE, Justice, dissents.

LAGARDE, Justice, dissenting.

I respectfully dissent. This case has been properly presented to us for review; therefore, I would reach the merits on all points of error and, for the reasons set out below, affirm the judgment.

On original submission, I joined the majority in abating this appeal and directing the trial court to conduct a formal *Batson*[1] hearing and to make findings of fact and conclusions of law and to file them with this court in written form in a supplemental transcript. In my view, an abatement at that time was necessary, because the absence from the record of factual findings by the trial court "prevent[ed] the proper presentation" of the case to this court on the *Batson* point. *See* TEX.R.APP.P. 81(a). Our March 7, 1988 abatement order reads as follows:

### ORDER

In accordance with this Court's opinion of March 7, 1988, this appeal is ABATED. We direct the trial court to conduct a formal hearing to determine, under the standards of *Batson* and this opinion, whether there has been purposeful racial discrimination in the State's exercise of its peremptory strikes at trial. The trial

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

court should consider all relevant circumstances at the original trial as well as those developed at the hearing.

At the hearing, appellant Larry Donnell Newsome should be given the opportunity to demonstrate a prima facie case as outlined in *Batson*. If the trial court determines that he fails to establish a prima facie case, the State is not required to explain the bases for its peremptory challenges. If the trial court finds that appellant succeeds in making a prima facie case, the State shall be given the opportunity to offer a neutral explanation for its actions. The trial court shall then decide whether appellant has established purposeful discrimination.

It is ordered that the trial court prepare written findings of fact and conclusions of law and file them with this Court as a supplemental transcript along with statement of facts from the hearing by March 31, 1988.

Even though purportedly specific in nature, our order does not direct the trial court to allow cross-examination, and indeed, read in context, can be construed to implicitly direct the trial court to base its decision as to purposeful discrimination on the State's explanation of its strikes.

The trial court conducted a *Batson* hearing and, in my judgment, thereby complied with the specific directive given it by this Court. Findings of fact and conclusions of law have been filed, and the case has been properly presented to us for our review. No further factual determinations are necessary for our review of the case on the merits of the *Batson* point of error. Even so, rather than following the mandate of rule 81(b)(2) of the Texas Rules of Appellate Procedure and proceeding to a harm analysis, the majority chooses, sua sponte,[2] to once again abate the appeal and, this time, specifically order the trial court to allow the defense to cross-examine the for-

mer prosecutor. The majority relies on this Court's seven to six decision in *Williams v. State*, 767 S.W.2d 872, 876–77 (Tex.App.—Dallas, 1989, rev. ref'd) (en banc) as authority that Newsome was entitled to cross-examine the prosecutor at the *Batson* hearing conducted by the trial court almost a year ago.

### Abatement

It is my view that once a case has been properly presented to us for review, it is our duty to conduct such a review on the record before us. If the record reflects error, then it is the mandate of rule 81(b)(2)[3] to reverse "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." If we determine, beyond a reasonable doubt, based on the record before us, that the error made no contribution to the conviction or to the punishment, we should affirm the judgment. TEX.R.APP.P. 81(b)(2).

Further, I read rule 81(a) to allow us to abate an appeal and direct the trial judge to correct its error only in cases where two things exist, that is: (1) where the error "prevents the proper presentation" of the case to the appellate court and (2) where, without remedial action, reversal would be required. Because I felt both those things existed at the time of our first abatement, I joined the majority in directing the trial court to take remedial action.[4] Because, in my judgment, neither of these things now exists, I decline to join in a second abatement. To do so, sua sponte, under the facts here, in my opinion, removes the court from its rightful role of a fair and impartial reviewing court and casts it in the role of an advocate and a "supervisor" of the trial court. In my judgment, this is not the "office" of an appellate court. It is my view that once a case is properly presented

---

**2.** Neither the defense nor the State requested relief in the form of abatement, nor has any mandamus action been filed.

**3.** TEX.R.APP.P. 81(b)(2).

**4.** Rule 81(a) speaks in terms of "proper presentation of the case," not proper presentation of

particular points of error. Our March 7, 1988 opinion clearly partially addressed the merits. Therefore, it could be said, as indeed the State has said, that the first abatement was unnecessary. Nevertheless, at that time I felt an abatement was within the scope of rule 81(a).

to us—that is, when we are not prevented from a proper review by the absence of a factual record *necessary* to our decision—both sides are entitled to a review on the record then before us.

If, after review, the record reflects error, rule 81(b)(2) mandates that we conduct a harm analysis. If we determine beyond a reasonable doubt that the error is harmless, under the standard set out in rule 81(b)(2), then the State is entitled to an affirmance. If we do not so determine, then the appellant is entitled to a reversal. I decline to join in a second abatement and thereby *unnecessarily* require the State to *necessarily* expend further resources to secure the presence of Newsome,[5] *once again,* for the limited purpose of allowing cross-examination of the former prosecutor as to his state of mind at the time of his strikes, solely on authority of a factually distinguishable seven to six decision handed down almost a year after the hearing.

### The Merits

I first address Newsome's point of error addressed by the majority. Newsome asserts that the trial court erred when it denied him his right to cross-examine the prosecutor at the *Batson* hearing. Undisputedly, the record is devoid of an offer of proof or bill of exception preserving for our review what the excluded testimony would have been had the court allowed cross-examination. Consequently, the error is not preserved for review. *Brown v. State,* 750 S.W.2d 340, 341 (Tex.App.—Beaumont 1988, no pet.); *see* TEX.R.CRIM.EVID. 103(a)(2).

### Williams v. State

Retroactively applying *Williams,* at 876–77, the majority hold Newsome had a right to question the prosecutor concerning his racially neutral reasons for striking minority venire members. Applying the factors which are traditionally considered in determining the retroactive application of a new

constitutional rule of criminal procedure, *i.e.,* (1) the purpose to be served by the new rule, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new rule, *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986), *citing Solem v. Stumes,* 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1983), I conclude that *Williams* should not be retroactively applied. As recognized by the dissents in *Williams,* cross-examination of the prosecutor would add nothing to the *judicial* inquiry required by *Batson. See Williams,* at 882, 883 (Enoch, J., dissenting), at 881 (Lagarde, J., dissenting). Further, different facts render *Williams* distinguishable, therefore, inapplicable. *See infra.*

However, assuming *arguendo* that error is preserved and that *Williams* does apply, I conclude, on the whole record, that error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *cf. Smith v. United States,* 414 A.2d 1189, 1199 (D.C.1980) (the trial court committed harmless error by denying defense counsel's request to cross-examine the State's witness on voir dire). The trier of fact here is the court, not the jury; the real issue here is essentially one of credibility. The trial court itself questioned the prosecutor, thereby testing the plausibility of his explanations. Defense counsel argued the mathematical proportions of the minority members in the jury composition as well as "reliability and credibility" of the prosecutor's statements; procedurally, defense counsel was allowed to take the prosecutor on voir dire to challenge the origin of his racially neutral reasons, which, in substance, was tantamount to cross-examination; defense counsel secured a favorable ruling to his objection to general questions and the trial court re-

---

5. Newsome received a life sentence and, therefore, presumably has been "transferred to the Department of Corrections on a commitment pending a mandate from the [appellate court]." TEX.CODE CRIM.PROC.ANN. art. 42.09, § 3 (Vernon 1989). Newsome has a right to be personally present at the hearing. *See* TEX. CODE CRIM.PROC.ANN. art. 33.03 (Vernon 1989).

quired specific answers of the prosecutor; and defense counsel suggested to the court that the prosecutor's reasons were pretextual. Prior to the trial court's rendition of its findings, defense counsel successfully required the State to search its files for personal notes.

I conclude, therefore, on the record as a whole, that defense counsel, through his voir dire questioning, and the trial court, through its own questioning, adequately tested the plausibility of the former prosecutor's reasons for its peremptory strikes. Therefore, for all the reasons stated, I would overrule Newsome's second point of error that the trial court reversibly erred in denying his request to cross-examine the prosecutor. The trial court found as a fact that no purposeful discrimination occurred. Inasmuch as the trial court is the exclusive judge of the credibility of the witnesses and, further, because the trial court's findings of fact have sufficient evidentiary support in the record and are entitled to "great deference," *Batson*, 106 S.Ct. at 1724 n. 21, I would overrule Newsome's first point that the trial court erred in overruling his objection to the jury based on *Batson* error.

Consequently, I would affirm.