Larry Donnell NEWSOME, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00276–CR.

Court of Appeals of Texas,
Dallas.

Feb. 19, 1992.

**262**

Keith E. Jagmin, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before LAGARDE, THOMAS and OVARD [1], JJ.

## OPINION

THOMAS, Justice.

A jury convicted Larry Donnell Newsome of aggravated sexual assault and assessed punishment, enhanced by one prior felony conviction, at life imprisonment. In his original brief, Newsome raised five points of error asserting that: (a) the evidence was insufficient to support the conviction; (b) the trial court erred in denying him a Batson[2] hearing; (c) the jury instructions regarding parole and good-time credit were improper; and (d) the trial court erred in overruling his objections to the prosecutor's leading questions on direct examination of complainant.

In an unpublished opinion, we held that the evidence was sufficient to support Newsome's conviction and, therefore, overruled his first and second points of error. Newsome v. State, No. 05–87–00276–CR, slip op. at 2–4 (Tex.App.—Dallas, March 7, 1988, n.w.h.) (Newsome I). We sustained the Batson complaint and abated the appeal with instructions to the trial court to conduct proceedings consistent with Batson and this Court's opinion. Newsome I, slip op. at 10.

After the trial court's record was returned to this Court, Newsome filed a supplemental brief complaining that the trial court erred: (a) in concluding that he had failed to show that the prosecutor had used

racially motivated peremptory challenges; and (b) in denying his request to cross-examine the prosecutor concerning the reasons given for his peremptory challenges. We sustained his supplemental point of error two and again abated the appeal in order to allow Newsome to cross-examine the prosecutor. See Newsome v. State, 771 S.W.2d 620 (Tex.App.—Dallas 1989, pet. ref'd) (Newsome II).

The record of the second hearing is now before this Court. Newsome has filed a third supplemental brief, reurging the points of error from his original brief, restating his supplemental point of error concerning the prosecutor's use of peremptory challenges, and presenting a new point of error contending that the trial court erred in denying his request to review the prosecutor's notes for purposes of cross-examination.

We now address Newsome's remaining points: (a) the trial court erred in denying his request to review the prosecutor's notes for purposes of cross-examination during the Batson hearing; (b) the prosecutor used his peremptory challenges to discriminate in violation of Batson; (c) the trial court erred in instructing the jury regarding parole and good-time law as mandated by article 37.07, section 4 of the Texas Code of Criminal Procedure; and (d) the trial court erred in overruling his objections to the prosecutor's leading questions during the direct examination of the complainant. Finding no reversible error, we overrule all points of error and affirm the trial court's judgment.

## PROSECUTOR'S NOTES

■ Newsome complains that the trial court erred in refusing to require the prosecutor to tender handwritten notes he had made in preparation for his testimony at the first Batson hearing. The following exchange occurred during the second Batson hearing:

Ovard has reviewed the briefs and the record before this court.

---

1. The Honorable John Ovard, Justice, succeeded the Honorable Joseph A. Devany, a member of the original panel, at the expiration of Justice Devany's term on December 31, 1988. Justice

2. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

[DEFENSE COUNSEL]: For purposes of cross-examination may I review [the prosecutor's] jury selection cards?

THE COURT: What you have are the notes that you made?

[WITNESS]: Your Honor, I have the notes that I made in preparation for the hearing, not the notes I made at the time of jury selection.

THE COURT: Your request is denied.

[DEFENSE COUNSEL]: The notes that you have were made subsequent to the jury selection in anticipation of the last hearing?

[WITNESS]: They were made probably a couple of days or a week before the hearing two years ago.

[DEFENSE COUNSEL]: The notes would have been made based upon a review of what?

[WITNESS]: Well, I had received information there may be a Batson hearing and I got a copy of the cards and as soon as I started looking at them I was indicating certain things as to why I struck particular jurors. The notes that I made, which probably no one else can read since I have got such bad handwriting, I made a half page of notes so I could testify in some sort of logical order before the Court when we had the Batson hearing before.

[DEFENSE COUNSEL]: Those notes would constitute a statement of yours concerning the specific reasons you recall for having struck people, that is jurors, back in the trial of this case in 1987?

[WITNESS]: The particular jurors 2, 8, 9, 14, 15, yes.

[DEFENSE COUNSEL]: Your Honor, again pursuant to Rule 612 [3] and 614 of the Texas Rules of Criminal Evidence we request the opportunity to review the notes we have been discussing for purposes of cross-examination.

[STATE]: Your Honor, we object on the grounds that that's work product.

THE COURT: The objection is sustained and your request is denied.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: At this time I would request the opportunity to review the notes of [the prosecutor] for cross-examination.

THE COURT: Your request is denied.

[DEFENSE COUNSEL]: Once again we renew the request that they be made a sealed exhibit to this record for purposes of transmittal to the Court of Appeals.

THE COURT: Your request is denied.

On appeal, Newsome relies on rule 614(a) of the Texas Rules of Criminal Evidence.[4] Rule 614(a) provides that, once a witness has testified on direct examination, the party who did not call him is entitled to examine and use "any statement of the witness" that is in the possession of the witness or his attorney provided that the statement relates to the subject matter of the witness's testimony. "Statement" is given the following specific and limited definition:

As used in this rule, a "statement" of a witness means:

(1) a written statement made by the witness that is signed or otherwise adopted or approved by him;

(2) a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof; or

(3) a statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury.

TEX.R.CRIM.EVID. 614(f). Newsome asserts that, because the prosecutor acknowledged that his notes would constitute his statement, defense counsel was entitled to the notes under rule 614. We disagree.

Newsome has not cited, nor have we found, any cases in which the definition of "statement" has been stretched to encom-

---

**3.** Newsome does not assert on appeal that the trial court erred in overruling his objection as to rule 612. Therefore we do not address that issue.

**4.** Rule 614 was formerly the rule of *Gaskin v. State,* 172 Tex.Crim. 7, 353 S.W.2d 467 (1961). *See Mayfield v. State,* 758 S.W.2d 371, 375 (Tex. App.—Amarillo 1988, no pet.).

pass private writings that a witness has made solely for his own use in testifying and that only the witness has seen. On the contrary, cases in Texas and other jurisdictions with similar rules have used "statement" only in more formalized contexts, such as a statement given by a witness to a prosecutor or to a police officer or a statement given to a grand jury. *E.g.*, TEX. R.CRIM.EVID. 614(f)(3). *See generally* Annotation, *Right of Accused in State Courts to Inspection or Disclosure of Evidence in Possession of Prosecution*, 7 A.L.R.3d 8 (1966 & Supp.1991); Annotation, *Right of Defendant in Criminal Case to Inspection of Statement of Prosecution's Witness for Purposes of Cross–Examination or Impeachment*, 7 A.L.R.3d 181 (1966 & Supp.1991). While the notes may constitute a "writing used to refresh memory," they do not rise to the level of a rule 614 "statement," notwithstanding the reference that the "notes would constitute a statement" of the prosecutor's reasons for exercising his peremptory strikes. Merely calling such notes a "statement" does not make them so. Rule 614 limits the definition of "statement," unlike the broader rule 611, which applies to "writings used to refresh memory." We conclude that, if the rule drafters had intended to create as expansive a definition, they would have done so. Because we determine that the notes do not fall under the definition of "statement" in rule 614, we hold that the trial court did not err in refusing to require the prosecutor to produce his notes under this rule.

■ Even if the prosecutor's notes were a "statement" discoverable under rule 614, we further conclude that Newsome failed to preserve this complaint on appeal. Although a trial court may err in refusing the defendant the right to review the notes, it is not reversible error unless the defendant can show harm. *Pinson v. State*, 598 S.W.2d 299, 301 (Tex.Crim.App.1980). This Court must consider whether the accused, as a result of the refusal to require production of the notes, was denied effective cross-examination or possible impeachment of the witness. *See Cullen v. State*, 719 S.W.2d 195, 196–97 (Tex.Crim.App.1986).

To determine the harmfulness of the error, if any, this Court must examine the prosecutor's notes. *See Cullen*, 719 S.W.2d at 198.

Although Newsome requested that the prosecutor's notes be sealed and included in the record for appellate review, they are not a part of this appellate record. In order to preserve error, after the request is denied, the defendant must make an effort to incorporate the notes into the appellate record. *Moore v. State*, 509 S.W.2d 349, 352 (Tex.Crim.App.1974); *Zanders v. State*, 480 S.W.2d 708, 711 n. 4 (Tex.Crim.App. 1972). It was Newsome's burden to include in the record all matters that illustrate the errors that he asserts. TEX. R.APP.P. 50(d). The record does not reflect any efforts to incorporate the statement in the appellate record nor does Newsome complain in a point of error of the trial court's refusal to include the statement in the record. Therefore, we conclude that Newsome has failed to preserve this error, if any. *See* TEX.R.APP.P. 52; *Gaines v. State*, 811 S.W.2d 245, 251 (Tex.App.—Dallas 1991, no pet.). Accordingly, we overrule the second point of error contained in Newsome's third supplemental brief.

### *BATSON* CHALLENGES

In two of the supplemental briefs, Newsome contends that the trial court erred in overruling his objection to the prosecutor's use of peremptory challenges to discriminate against prospective jurors on the basis of race. At the first *Batson* hearing, the trial court found that Newsome made a prima facie case of racial discrimination with regard to the peremptory challenges of three prospective jurors: veniremembers 2, 9, and 14. Thus, the burden shifted to the State to present racially neutral reasons for the peremptory challenges of these potential jurors. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722. After hearing the explanations, the trial court concluded that the State had come forward with neutral reasons and that the State did not challenge any of the potential jurors solely on account of their race. Thus, the trial court

ruled that Newsome failed to establish purposeful discrimination.

 In reviewing the trial court's decision, this Court must consider the evidence in the light most favorable to the trial court's ruling and reverse only if we determine that the ruling was clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (op. on reh'g.). A trial court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *quoted with approval in Whitsey,* 796 S.W.2d at 721.

At the first *Batson* hearing, Randy Manasco, the prosecutor who participated in voir dire for the State, testified that he struck veniremember 2 (Bostic) because he was from New York: "[O]ne of the generalizations that I have is that people from the East Coast, particularly from New York, are very used to seeing violence.... And if you are dealing with a situation as a prosecutor where there's a rape case, my preference is to have jurors that are not used to that as a part of life." Manasco also stated that he struck Bostic because he had been in Dallas only two and one-half years—a matter of "community ties." He further noted that he struck two non-African-American prospective jurors who were from New York and New Jersey. Further, he struck another veniremember who had lived in Dallas only a short time. The trial court asked Manasco whether it was his practice as an assistant district attorney to strike jurors who were born or who had lived on the East Coast, and Manasco affirmed that this was his practice.

At the second *Batson* hearing, Manasco testified on cross-examination that he struck Bostic specifically because he was from New York; when he first saw the juror card, the fact that the juror was from New York was a "red flag." Manasco acknowledged that he did not question Bostic concerning his views of violent crimes but, rather, based the strike on his general-

ization that people from New York are hardened to crime. He further stated that, to his knowledge, there was no particular element of the case that was tied to the Eastern Seaboard.

As to veniremember 9 (Aldridge), Manasco testified at the first hearing that he struck her because she was a teacher. He felt that teachers have a liberal bent; furthermore, Aldridge taught in high school, where Manasco believed "it's not an unusual occurrence to see violence." Another factor causing him to strike Aldridge was that teachers and school administrators often resolve criminal matters among students without involving law enforcement. Manasco stated that he struck a white male prospective juror for the same reason; the white male was an educator, a professor at North Texas State University. The trial court asked Manasco if it was his practice as an assistant district attorney to strike teachers, and he replied that it was.

At the second *Batson* hearing, Manasco confirmed that he struck Aldridge based on her occupation, although he did not question her regarding her views of crime. Manasco stated that he considered such questioning futile because no one would admit a liberal attitude toward crime. He admitted that the juror's occupation had no relation to any specific aspect of the case.

In connection with veniremember 14 (Gooden), Manasco testified at the first hearing that she was struck because she filled out her juror-information card incorrectly.[5] Manasco explained, "Someone who is not even able to fill out a juror-information card, I do not want to trust with the responsibility—unless there are some other factors such as a way that they are developing rapport with me or something of that nature—to sit on a jury where we're asking to send someone to the penitentiary for life." At the second *Batson* hearing, Manasco testified that he felt that the error in filling out the card showed carelessness. Manasco stated that he was particularly concerned with such carelessness because the listed occupation was a senior supervi-

---

**5.** The record reflects that she put her date of birth in the box labeled "place of birth."

sor for Blue Cross–Blue Shield, a job which he thought dealt with paperwork on a regular basis. Manasco admitted that he did not individually question this potential juror during voir dire.

Newsome argues that, while the reasons given by the prosecutor are facially race-neutral, they are pretextual. Newsome compares this case to *Whitsey*, in which the Court of Criminal Appeals reversed the trial court's ruling that the prosecutor's reasons rebutted the prima facie case of discrimination, in part because the prosecutor failed to question the prospective jurors, the reasons given were based on an alleged group bias but the group trait was not shown to apply to the prospective jurors specifically, the reasons were not related to the facts of the case, and persons with the same or similar characteristics as the challenged prospective juror were not struck. Newsome failed to note one significant difference between *Whitsey* and the case at bar. In *Whitsey*, the prosecutor indicated the race of each black prospective juror by marking the letter "B" next to his or her name, *Whitsey*, 796 S.W.2d at 711, 726, making it plausible that race played a role in the decision to peremptorily strike those prospective jurors.

The State is allowed to make peremptory strikes based on the prosecutor's legitimate "hunches" so long as racial discrimination is not a motive. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Crim.App. 1988); *Jones v. State*, 781 S.W.2d 415, 418 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). The trial court could have found that Manasco had a legitimate belief or hunch that Bostic and Aldridge might be accustomed to violent crime and thus less inclined to feel sympathy for the victim. The State's explanation indicates the prosecutor's concerns that a teacher might be more inclined toward administrative remedies rather than punishment in prison, that a recent Dallas resident would have fewer community ties, and that someone who makes an error in filling out a card might give less than careful consideration to the verdict. The issue then becomes whether this "hunch" was race-neutral or motivated by racial discrimination. *York v. State*, 764 S.W.2d 328, 330–31 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

In the case of Bostic and Aldridge, the prosecutor also struck non-minority veniremembers with the same perceived characteristics. Also, an African–American served on the jury, indicating the State's willingness to have African–Americans serve on the jury. *York*, 764 S.W.2d at 331. This fact, together with the lack of disparate treatment, counterbalances the State's failure to tie the perceived traits of New Yorkers and teachers specifically to Bostic and Aldridge. We also note that the validity of the explanations depended on an assessment of Manasco's credibility, which the trial court was in the best position to make. *Jones*, 781 S.W.2d at 417. "The challenge, after all, is still a peremptory one." *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex.Crim.App.1987). As to Gooden, we note that inability to properly fill out juror-information cards has been held a racially neutral reason for excluding a juror. *Catley v. State*, 763 S.W.2d 465, 467 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Viewing the record in the light most favorable to the trial court's ruling, we are not left with the definite and firm conviction that a mistake has been committed. We hold that the trial court's ruling that Newsome failed to sustain his burden of proving that the prosecutor used his peremptory challenges to discriminate against minority prospective jurors is not clearly erroneous. Thus, we overrule Newsome's supplemental points asserting *Batson* error.

## THE COURT'S CHARGE ON PAROLE

In Newsome's original brief, he asserts in his fourth point of error that the trial court erred in overruling his objection to the court's charge concerning the law of parole at the punishment stage. The charge was given pursuant to article 37.07, section 4(a) of the Texas Code of Criminal Procedure, which the Court of Criminal Appeals in 1987 declared unconstitutional.

*Rose v. State*, 752 S.W.2d 529, 535 (Tex. Crim.App.1987).[6] However, the error is not automatically reversible. This Court must reverse for such error, unless we determine beyond a reasonable doubt that the error made no contribution to Newsome's punishment. Tex.R.App.P. 81(b)(2). The State, as the beneficiary of the error, has the burden to show beyond a reasonable doubt that the error did not contribute to the punishment. *Arnold v. State*, 786 S.W.2d 295, 298 (Tex.Crim.App.1990).

▆▆▆ Each *"Rose harm"* case must be examined individually in light of the following relevant factors:

(1) Whether discussion of parole law or good time credits occurred during voir dire;

(2) The quantity and quality of allusions to parole or good time laws made during jury argument;

(3) Whether the jury sent notes to the judge during deliberations asking for clarification of parole or good-time laws or their application to the defendant;

(4) The actual sentence assessed in light of the facts and the circumstances of the case. The sentence's divisibility by three was viewed as one circumstance that could indicate consideration of parole laws because the statutory charge stated that prisoners became eligible for parole after serving one third of their sentence (this one-third quantity being computed as "flat time" in some circumstances but including good-time credits in others);

(5) Entry of an affirmative finding of the use of a deadly weapon in the judgment;

(6) The facts of the particular case;

(7) The prior criminal record of the defendant;

(8) Whether other instructions concerning parole were given by the court in addition to the statutory instruction— particularly the "traditional curative instruction"; and

(9) Whether defense counsel raised an objection to the parole instruction.

*See Brown v. State*, 798 S.W.2d 284, 285–86 (Tex.Crim.App.1990); *Arnold*, 786 S.W.2d at 311. Although this list is not exhaustive, we will refer to it for guidance and will discuss each applicable factor. In addition, we note that there is no specific weight attached to each factor, nor is the mere presence or absence of any one factor determinative. *Escobar v. State*, 800 S.W.2d 525, 527 (Tex.Crim.App.1990).

Newsome was convicted of aggravated sexual assault and assessed the maximum sentence of life imprisonment and a $10,000 fine. The evidence established that complainant was a twenty-five-year-old mother who was alone in a beauty salon where she worked. Newsome came in, talked to her, left, and returned a few minutes later. He pulled out a gun and told her to open the cash register and to give him her wedding rings. When she refused, he said, "Give them to me or I'll stab you." He was wielding a pair of scissors with five-to-six-inch blades. After giving him the rings, complainant ran into the back office and hid behind the door. He came into the office and looked through her purse and desk for money. At this point, Newsome told complainant to lift her skirt. When she refused, he held the scissors against her throat and told her to lift her skirt or he would stab her. Newsome then told her to lean on a chair. Then he pulled up her skirt, pulled down her hose and panties, and pulled out complainant's tampon. While Newsome was raping her, he held the scissors against her stomach. Complainant cried and screamed for God to help her. Repeatedly, Newsome threatened her saying, "Shut up, bitch, or I'll stab you."

▆▆▆ No reference was made to the parole law during voir dire. The trial court instructed the jury, over Newsome's objection, on the parole law in accordance with article 37.07, section 4 of the Texas Code of Criminal Procedure.[7] The trial court did

---

6. Because Newsome was tried in 1987, it is unnecessary to address the 1989 amendment to the Texas Constitution that authorizes such an instruction.

7. A defendant's objection to the parole law instruction is relevant to determining whether the defendant tried to use the instruction to his benefit. *Arnold*, 786 S.W.2d at 301–02.

not give an "additional curative instruction" as in *Rose*.

Evidence of four prior felony convictions was presented to the jury. The jury was told that Newsome was convicted of burglary of a habitation in 1982 and that he received a five-year probated sentence. When Newsome violated the terms of probation, he received five years' imprisonment. In addition to a burglary conviction that was the subject of the enhancement paragraph, Newsome was convicted of another burglary of a habitation. Further, he was convicted of burglary of a vehicle, and he used a deadly weapon during the commission of that offense. These convictions, in addition to the facts of the instant case, most certainly contributed to the jury's assessment of punishment. *Rose*, 752 S.W.2d at 554.

Newsome's counsel did not discuss the operation of the parole law. The State referred neither to the parole instruction nor to the parole law's instruction. In the context of Newsome's four prior felony convictions, the prosecutor stated that Newsome had received ten-year sentences in the 1983 burglaries and a seven-year sentence in 1983 following the probation revocation for the burglary-of-a-vehicle conviction. Although the prosecutor never specifically mentioned that Newsome had previously been paroled, he did state that the prior lenient treatment that he had received from the justice system allowed him to engage in more crime. The prosecutor also stated:

> [H]opefully after he gets out, after his life sentence[,] he will go onto Houston or San Antonio or some other town and stay out of Dallas.
>
> \* \* \* \* \* \*
>
> [I]f you are going to tolerate Larry Newsome, a violent, habitual criminal, a rapist, back on the streets of this town any sooner than necessary, then go ahead and give him less than a life sentence if that's what you want to do.

Together, these statements do imply that Newsome would eventually be released but that he would stay in prison longer with a life sentence. However, in context, the prosecutor's remarks meant that the jury should assess life imprisonment, the maximum penalty allowed, as an expression of moral outrage, to equalize the scales between Newsome and his victim. *See Brown*, 798 S.W.2d at 289. The prosecutor also asked that the jury assess the maximum penalty to send a message to the penitentiary that Dallas is not the land of criminal opportunity. The argument was not made in terms tending to induce consideration of the eligibility formula and other parts of the section 4(a) instruction. *See Harding v. State*, 790 S.W.2d 638, 640 (Tex.Crim.App.1990) (prosecutor directed jury to consider the section 4(a) instruction twice). Assuming that this argument was a passing mention of parole, we conclude that, within the context stated, it was of neutral weight on the scales of harmless error. *See Brown*, 798 S.W.2d at 289.

The only note sent by the jury asked, "Is life a harsher term than 99 years?" Not every jury inquiry about the difference between ninety-nine years and life may improperly implicate the parole law instruction. *Weatherall v. State*, 803 S.W.2d 313, 315 (Tex.Crim.App.1991). In the instant case, the prosecutor asked the jury to give the maximum sentence of life imprisonment and a $10,000 fine as an expression of moral outrage to condemn Newsome's conduct. The fact that the jury assessed what was requested is an indication that the jury was concerned, not with the law of parole, but rather with meting the maximum punishment. Based upon the factors present in this case, we conclude beyond a reasonable doubt that the parole instruction made no contribution to the punishment. Accordingly, we overrule the fourth point of error contained in Newsome's original brief.

## LEADING QUESTIONS

In the fifth point of his original brief, Newsome contends that the trial court erred in overruling his objections to leading and suggestive questions by the prosecutor. The State's sole response to this point is that Newsome has waived any error because the trial court sustained "most of

[Newsome's] objections" and that Newsome requested no additional relief. Because the trial court did overrule some of Newsome's objections, he has not waived error in all instances. Thus, we will address those claims on the merits.

Newsome's complaint concerns the following testimony of the complaining witness:

[PROSECUTOR]: Did all of the events that you have testified about occur here in Dallas County, Texas?

[WITNESS]: Yes.

[PROSECUTOR]: On June 19, 1986?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled.

[PROSECUTOR]: Ma'am, on that date did Larry Donnell Newsome cause the penetration of your female sexual organ?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled. You may answer the question.

[WITNESS]: Yes, he did.

[PROSECUTOR]: All right. And have you ever been married at any time whatsoever, specifically, June 19, 1986, to Larry Donnell Newsome?

[THE COURT]: Just a moment.

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Just a moment. Mr. [defense counsel]?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Your objection is overruled. You may answer the question.

[PROSECUTOR]: Ma'am, the question was: have you ever been married at any time, specifically, June 19, 1986 to Larry Donnell Newsome?

[WITNESS]: No.

[PROSECUTOR]: Did he—on that date did he penetrate your female sexual organ without your consent?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled. You may answer.

[WITNESS]: Yes, he did.

[PROSECUTOR]: Without your consent?

[WITNESS]: Yes, sir.

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled.

[PROSECUTOR]: Did he do so by means of his sexual organ?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled. You may answer.

[WITNESS]: Yes, he did.

[PROSECUTOR]: And during the course of this incident, ma'am, did he exhibit a firearm?

[DEFENSE COUNSEL]: Objection, leading.

[THE COURT]: Overruled. You may answer.

[WITNESS]: Yes, he did.

▬ Newsome contends that rule 610 of the Texas Rules of Criminal Evidence prohibits the use of leading questions on direct examination of a witness. We must first determine whether the questions were, in fact, leading. The mere fact that a question may be answered by a simple "yes" or "no" will not render it an impermissibly leading question. *See Hodges v. State,* 108 Tex.Crim. 210, 299 S.W. 907, 908 (1927). A question is impermissibly leading only when it suggests which answer, yes or no, is desired, or when it puts into the witness's mouth words to be echoed back. *See Myers v. State,* 781 S.W.2d 730, 733 (Tex.App.—Fort Worth 1989, pet. ref'd); *Fuller v. State,* 95 Tex.Crim. 452, 254 S.W. 967, 968 (1923). The questions set out above are not leading because they require a simple yes or no answer; however, they do merely ask for confirmation of testimony in the words of the prosecutor. Therefore, it appears that these questions were indeed leading.

▬ Rule 610(c) does not, however, forbid the asking of leading questions; it states that leading questions "should not be used on the direct examination of a witness *except as may be necessary to develop his testimony.*" Tex.R.Crim.Evid. 610(c) (emphasis added). The rule clearly

contemplates that some leading is acceptable at the trial court's discretion. *Myers,* 781 S.W.2d at 733. Prior to the adoption of rule 610(c), the Court of Criminal Appeals held in a long line of cases that permitting leading questions on direct examination is a matter within the sound discretion of the trial court and that no abuse of discretion is shown unless the defendant can show that he was unduly prejudiced by virtue of such questions. *See, e.g., Navajar v. State,* 496 S.W.2d 61, 64 (Tex.Crim.App. 1973); *Ortega v. State,* 493 S.W.2d 828, 831 (Tex.Crim.App.1973); *Ballew v. State,* 452 S.W.2d 460, 461 n. 1 (Tex.Crim.App.1970). The adoption of rule 610 does not appear to have changed this long-standing proposition.

We note that rule 610(c) of the Texas Rules of Criminal Evidence is similar to the federal rule regulating leading questions on direct examination. *See* FED.R.EVID. 611. Federal courts have held that permitting leading questions is within the discretion of the trial judge and that the trial judge's discretion is abused primarily where the question asked has the effect of supplying the witness with a "false memory." *See United States v. Johnson,* 495 F.2d 1097, 1101–02 (5th Cir.1974).

■ The record reflects that the testimony elicited by the complained-of leading questions had already been presented to the jury without recourse to leading questions. Thus, no prejudice is shown. *Hernandez v. State,* 643 S.W.2d 397, 400–01 (Tex.Crim.App.1982). Furthermore, the questions were not prejudicial because, to the extent they elicited any information for the first time, they merely clarified prior testimony. *Myers,* 781 S.W.2d at 733. In addition, we note that the majority of the witness's testimony was without the aid of leading questions. There is no suggestion from the record that the questions supplied the witness with a false memory. *See Johnson,* 495 F.2d at 1101–02. Thus, we conclude that the trial court did not abuse its discretion in permitting the State to use leading questions on the direct examination of its own witness. Accordingly, we over-

rule the fifth point which was asserted in Newsome's original brief.

Having overruled all points of error, we affirm the trial court's judgment.