TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00644-CR






Lester Gene Mathis, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 47,583, HONORABLE C. W. DUNCAN, JUDGE PRESIDING







 Appellant Lester Gene Mathis appeals from his conviction for the aggravated sexual
assault of a child. See Tex. Penal Code Ann. § 22.021(a)(2)(b) (West Supp. 1998). The trial
court assessed appellant's punishment at imprisonment for eight years. Appellant presents three
points of error complaining of the admission of alleged inadmissible evidence. We will overrule
appellant's points of error and affirm the trial court's judgment.

 In his first point of error, appellant contends that the trial court erred in overruling
his objection and in allowing the prosecutor to ask the victim of the offense a leading question
when she made an in-court identification of appellant. The portion of the record that appellant
insists demonstrates error follows:


[Prosecutor] Q: While you were waiting at this store did you happen to see --
if I'm number one and the lady seated next to me --


[Defense Counsel]: Objection, Your Honor, leading.


THE COURT: I beg your pardon?


[Defense Counsel]: He's leading.


THE COURT: Well, I'll admonish you not to lead but on this particular
question you may continue your question.


[Prosecutor]: Thank you, Your Honor.


Q: Fuquana, if I'm number one and the lady [next to me] Miss Erb is number
two, and the gentleman there is number three and the one past him is
number four, did you happen to see the person I've indicated as number
four?


A: Yes.


Q: Okay. And do you recognize him here today?


A: Yes.


Q: Did you come to know his name?


A: Yes.


Q: And what is his name?


A: Lester.


Q: Okay. Do you know his full name?


A: No.


Q: Okay. And but you saw him at the store that day?


A: Yes.


Q: All right.


[Prosecutor]: Your Honor, at this point we ask the record to reflect the witness
has identified the accused.


THE COURT: It may.



 "The asking of leading questions is seldom ground for reversal (especially where
a child is testifying)." Uhl v. State, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972); Trevino v. State,
783 S.W.2d 731, 733 (Tex. App.--San Antonio 1989, no pet.). In its discretion, a trial court may
allow leading questions "as may be necessary to develop the testimony of the witness." Tex. R.
Evid. 611(c); Newsome v. State, 829 S.W.2d 260, 269-70 (Tex. App.--Dallas 1992, no pet.);
Meyers v. State, 781 S.W.2d 730, 732-35 (Tex. App.--Fort Worth 1989, pet. ref'd). The trial
court did not abuse its discretion in allowing the question of which appellant complains. 
Appellant's first point of error is overruled.

 In his third point of error, appellant asserts that "the trial court erred in denying
defendant's first trial motion to admission of extraneous offenses." Appellant argues that his
statement, State's Exhibit Number 3, should not have been admitted in evidence because it
"introduce[d] a sex act with a third person," an extraneous offense. Appellant's two-page
statement reads as follows:




VOLUNTARY STATEMENT


(Not under arrest)



STATE OF TEXAS CASE NUMBER 4338-96

COUNTY OF BELL 


Before me, the undersigned authority in and for the said County and State, on
11/8/96 at 7:08 PM personally appeared:

NAME: Lester Gene Mathis, DATE OF BIRTH: 7/17/60, AGE: 36, HOME

ADDRESS: 101 North Roy Reynolds #D26, HOME TELEPHONE: None, WORK
ADDRESS: Transit Mix, WORK TELEPHONE: 1-800-831-9073


I am at the Harker Heights Police Department giving this statement to Detective
Erika Rose. I am here voluntarily to talk with Detective Rose about a girl I had sex
with. I was using the pay phone right by the Fort Hood Airfield, off of 38th
Street. There is a little store there. She just came outside the store and started
looking at me while I was on the phone. When I got off the phone, I asked her if
I could help her with something. She said she was waiting on somebody. I asked
her who you waiting on and all she told me was well she was, she just caught a ride
with somebody from New Jersey and now she don't have a place to stay. I told her
I had a two bedroom trailer and you can come stay with me. She said that's fine. 
Then when we got in the car, we started talking and I asked her who she had come
down here with and she said some guy from New Jersey. Then she said that the
guy that came down with her, they had been having sex all day. The guy's mother
came home and caught them in bed and kicked her out and that was why she was
at the little convenience store. While we were in the car talking, all of a sudden
she said that she wanted to have sex. When we got to the trailer, I showed her
where the bathroom was and she just started taking clothes off right in front of me
and got in the shower. So I left and went back in the livingroom. I stayed there
and when she came out the shower, she came out butt naked, with no clothes on. 
So I went and got a towel to let her dry off and she grabbed me by the hand and
said "don't worry about it, let's go to bed." So she helped me take my clothes off
and we had sex and so she stayed the night there and I went to work the next day
and when I came home that evening, I asked her if she had family down here and
she told me yes, that they stayed in Temple somewhere. I asked her "don't you
want to go home" and she said no. I asked her why not and she said her and her
dad were fighting about something but she would never tell me anything about it. 
So she tried to call somebody from New Jersey on my brother's cellular phone.

 

 [signature of affiant on page one]


[continuation on page 2] I start asking her, I had forgot her name, and she told me
something different. The more I asked her questions, the more she started giving
me different questions about everything. So she, this is the next day. I had left
that evening and did not come back home until about 4:30 AM and I told her that
she needed to pack her bags and I would drop her off somewhere. Between 6:00
PM the day before and until 4:30 PM, I was not even there so we did not have sex. 
She never told me how old she was or anything. I dropped her off at a 7-11 off of
Veteran's and that was the last time I seen her. There is a small window in my
bathroom. There is no lock on the door and the door goes into the bathroom. 
When she took her shower, she left the door wide open. End of Statement


I have read this statement consisting of (2) pages, each of which bears my signature
and I swear and affirm that everything contained herein is true and correct to the
best of my knowledge. My name is Lester Gene Mathis. I am 36 years of age and
have completed 12 years of education. I do read and write the English language. 
This statement was completed at 120 S. Harley in Harker Heights, Bell County,
Texas on 11/8/96 at 4:48 PM.

 [signature of affiant on page 2]


Sworn and subscribed before me at 120 S. Harley in Harker Heights, Bell County,
Texas on 11/08/96.


 [signature of notary] [typed name of notary]



 The girl mentioned in appellant's statement is not named or identified and he says
it could refer to a "sex act with a third person" not the victim of the charged offense. Further,
he says that the time of the sex act is not stated and could have referred to anytime between April
26 and November 1996 when he made the statement. However, appellant offered in evidence and
the trial court admitted an affidavit made by the victim concerning the charged offense. In this
four and one-half page affidavit offered by appellant, the victim told how she met appellant and
how he took her to his house where he raped her and locked her in a bathroom. Many of the facts
related in the victim's affidavit dovetail with the facts related by appellant in his statement. When
appellant's and the victim's statements are considered together with the other evidence, it is
unmistakable that appellant's statement concerned the victim of the charged offense and not
another girl. Furthermore, appellant's statement on its face, when considered alone, does not
show the commission of a criminal offense, because it does not give the age or description of the
girl with whom appellant says he had consensual sex. Therefore, the statement by itself does not
show that appellant committed an extraneous criminal offense. We overrule appellant's third point
of error.

 In his second point of error, appellant urges that "the trial court erred in denying
[his] second trial motion [to] suppress [his] written statement." Although appellant contends that
the written statement was made involuntarily, he does not claim that the statement was the product
of custodial interrogation or that it was made without the appropriate statutory warnings. See Tex.
Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 1998). "Article 38.22 applies only to
persons in custody." Nenno v. State, 970 S.W.2d 549, 556 (Tex. Crim. App. 1998). Appellant
argues that Harker Heights Police Officer Erika Rose Jordan induced him to make the statement
by taking advantage of him because he is "slow," by threatening to have him detained by the
district attorney if he did not make a statement and cooperate in her investigation, and by
threatening to have him prosecuted for kidnapping the victim.

 The trial court conducted a hearing out of the presence of the jury to determine the
admissibility of appellant's statement. Officer Jordan and appellant testified at the suppression
hearing. At a suppression hearing to determine the voluntariness of a defendant's statement, the
trial judge is the sole judge of the credibility of witnesses and the weight to be given their
testimony. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Ethridge v.
State, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994); Alvarado v. State, 853 S.W.2d 17, 23 (Tex.
Crim. App. 1993); In the Matter of L. R., 975 S.W.2d 656, 658 (Tex. App.--San Antonio 1998,
no pet.). Absent an abuse of discretion, a reviewing court should not disturb the trial court's
findings on appeal. See Ethridge, 903 S.W.2d at 15; Romero v. State, 800 S.W.2d 539, 543,
(Tex. Crim. App. 1990); Rodriguez v. State, 939 S.W.2d 211, 214-15 (Tex. App.--Austin 1997,
no pet.).

 The offense was alleged to have been committed on April 26, 1996. Sometime
before November 8, 1996, Officer Jordan had one or more telephone conversations with appellant
to set a time for an interview concerning her investigation of the instant offense. Appellant agreed
to come to the police station and talk to Officer Jordan. Appellant came to the police station,
discussed the offense Officer Jordan was investigating, and made a statement in affidavit form on
November 8, 1996. Appellant came to the police station at the appointed time, he was not placed
under arrest or in custody, and he left the police station after he made the affidavit. On March 12,
1997, Officer Jordan signed a sworn complaint for the issuance of a warrant charging appellant
with aggravated sexual assault. On June 4, 1997, an indictment was returned charging appellant
with the offense for which he was convicted.

 The 36-year-old appellant was a high school graduate and was working as a truck
driver. Although appellant testified that he left military service because he was "slow" and did
not receive the promotions that he should have, he completed six years of military service.

 Appellant testified that Officer Jordan threatened to have the district attorney detain
him if he did not cooperate with her investigation by making a statement. Officer Jordan stoutly
denied that she had made such a threat.

 Before she interviewed appellant, Officer Jordan had obtained an affidavit from 
the victim of the charged offense. The victim stated in her affidavit that appellant locked her in
a bathroom in his house. Officer Jordan's discussion with appellant of the kidnapping stemmed
from the victim's statement that appellant locked her in the bathroom. Appellant's claim that
Officer Jordan threatened to have him charged with kidnapping is based on her testimony that "at
one point in the interview, I did advise him that the aggravated portion stemmed from the potential
kidnapping charge that was being looked into." Of course, a sexual assault becomes aggravated
if a defendant "by acts or words occurring in the presence of the victim threatens to cause the
. . . kidnapping of any person." See Tex. Penal Code Ann § 22.021(a)(2)(A)(iii) (West Supp.
1998). Appellant was not charged with kidnapping nor was the sexual assault in this case 
aggravated by reason of kidnapping. The charged offense was aggravated because the victim was
under fourteen years of age. See Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 1998). 

 At the conclusion of the suppression hearing, the trial court found that: (1)
appellant voluntarily came to the Harker Heights Police Department; (2) appellant was not under
arrest nor in custody before, during, or after the time he gave the written statement; (3) appellant
was mentally competent and understood the effect and results of his conduct in making the
statement; and, (4) the statement was made voluntarily and was admissible in evidence. The trial
court's findings were made after and in light of counsel's argument that appellant's statement was
involuntarily made because of his "subnormal mentality" and because he was threatened with
prosecution for kidnapping and with detention if he did not make a statement. The trial court's
findings of fact resolved conflicts in the evidence and are supported by the record. We hold that
the trial court did not abuse its discretion in finding that appellant made his statement voluntarily. 
We overrule appellant's second point of error. 

 The judgment of the trial court is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices B. A. Smith, Powers* and Dally**

Affirmed

Filed: January 28, 1999

Do Not Publish



















* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).


** Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



ant was a high school graduate and was working as a truck
driver. Although appellant testified that he left military service because he was "slow" and did
not receive the promotions that he should have, he completed six years of military service.

 Appellant testified that Officer Jordan threatened to have the district attorney detain
him if he did not cooperate with her investigation by making a statement. Officer Jordan stoutly
denied that she had made such a threat.

 Before she interviewed appellant, Officer Jordan had obtained an affidavit from 
the victim of the charged offense. The victim stated in her affidavit that appellant locked her in
a bathroom in his house. Officer Jordan's discussion with appellant of the kidnapping stemmed
from the victim's statement that appellant locked her in the bathroom. Appellant's claim that
Officer Jordan threatened to have him charged with kidnapping is based on her testimony that "at
one point in the interview, I did advise him that the aggravated portion stemmed from the potential
kidnapping charge that was being looked into." Of course, a sexual assault becomes aggravated
if a defendant "by acts or words occurring in the presence of the victim threatens to cause the
. . . kidnapping of any person." See Tex. Penal Code Ann § 22.021(a)(2)(A)(iii) (West Supp.
1998). Appellant was not charged with kidnapping nor was the sexual assault in this case 
aggravated by reason of kidnapping. The charged offense was aggravated because the victim was
under fourteen years of age. See Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 1998). 

 At the conclusion of the suppression hearing, the trial court found that: (1)
appellant voluntarily came to the Harker Heights Police Department; (2) appellant was not under
arrest nor in custody before, during, or after the time he gave the written statement; (3) appellant
was mentally competent and understood the effect and results of his conduct in making the
statement; and, (4) the statement was made voluntarily and was admissible in evidence. The trial
court's findings were made after and in light of counsel's argument that appellant's statement was
involuntarily made because of his "subnormal mentality" and because he was threatened with
prosecution for kidnapping and with detention if he did not make a statement. The trial court's
findings of fact resolved conflicts in the evidence and are supported by the record. We hold that
the trial court did not abuse its discretion in finding that appellant made his statement voluntarily. 
We overrule appellant's second point of error. 

 The judgment of the trial court is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices B. A. Smith, Powers* and Dally**