**Affirmed as Modified and Opinion Filed November 4, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00319-CR

### MARCELINO LOPEZ-MARTINEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-83185-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Partida-Kipness

Appellant Marcelino Lopez-Martinez appeals his conviction for continuous

sexual assault of a child. In three appellate issues, Lopez-Martinez contends (1) the

judgment is incorrect by stating he waived his right to appeal; (2) the trial court erred

by allowing the State to ask leading questions to the complaining witness; and (3)

the evidence was insufficient to prove the acts were committed thirty days or more

apart. We affirm as modified.

## PROCEDURAL HISTORY

Lopez-Martinez was indicted for continuous sexual assault of a child based on allegations that he abused his former girlfriend's daughter, G.Z.[1] *See* TEX. PENAL CODE § 21.02. The indictment alleged that on or about October 15, 2016 through March 1, 2018, Lopez-Martinez, during a period of thirty days or more, committed two or more sexual acts, namely aggravated sexual assault and/or indecency with a child by sexual contact, against G.Z., a child under the age of fourteen. Lopez-Martinez pleaded not guilty and proceeded to trial. A jury found Lopez-Martinez guilty of the charged offense and sentenced him to forty years' imprisonment. This appeal followed.

## BACKGROUND

G.Z.'s mother, M.Z., was first made aware of the abuse following a family party in March 2017, where G.Z. was seen inappropriately touching her cousin. Following that incident, G.Z. admitted to her mother that Lopez-Martinez had assaulted her. At trial, M.Z. testified she had dated Lopez-Martinez, but they ended their relationship prior to G.Z.'s outcry. M.Z. stated she noticed G.Z.'s personality changed midway through the relationship, but was unaware as to why. Although G.Z. told M.Z. about the abuse in 2017, M.Z. waited to file a police report until December 2018. M.Z. stated she waited to make a police report because G.Z. did not

---

[1] To protect the identity of the minor complainant and any child witnesses, we use initials or pronouns to identify G.Z. *See* TEX. R. APP. P. 9.8(b)(2).

want her to go to the police, M.Z. wanted G.Z. to have the dates "straight," and G.Z. was not in a "good emotional state" at the time she made her outcry. M.Z. also explained she wanted to wait until her divorce from G.Z.'s father was final so he could not try to gain custody of G.Z. After her divorce was finalized in August 2018, M.Z. reported the abuse to the police in December 2018.

Eligio Molina, the forensic supervisor for the Collin County Children's Advocacy Center (CAC), testified both as an expert witness and as the outcry witness[2] regarding his interview with G.Z. Molina testified he conducted a "minimally informed interview" of G.Z. in January 2019, when she was ten years old. Molina explained a "minimally informed interview" meant he would know the type of allegation made by the child but no additional facts prior to the start of the interview. He described G.Z. as crying and emotional before she entered the interview room and throughout the interview. Molina also explained G.Z.'s demeanor would change depending on the topic of conversation: she was happy when describing things she enjoyed and would start crying when talking about the abuse. He was concerned by how traumatized G.Z. seemed and did not see signs of coaching regarding the abuse.

G.Z. relayed three instances of abuse during the interview with Molina. She talked about one instance where Lopez-Martinez and M.Z. were in the kitchen and

---

[2] An outcry witness may testify regarding hearsay statements from a child complainant regarding sexual abuse when properly designated by the trial court. *See* TEX. CODE CRIM. PROC. art. 38.072.

Lopez-Martinez came to her bedroom. G.Z. said Lopez-Martinez touched her "toward the middle of her tissue, which was what she called her female sexual organ." She explained Lopez-Martinez used his fingers and "he went underneath her underwear and touched her on the skin with his fingers," moving in a circular motion. G.Z. tried to move his arm away from her, and Lopez-Martinez asked her in Spanish, "What are you doing?" She told him to "get off" of her and he stopped because M.Z. called for him from the kitchen. Molina said G.Z. thought she was eight or nine years old when this happened and it was in the fall.

Molina testified to another incident G.Z. recalled where she was home alone and Lopez-Martinez was there to paint a bathroom. M.Z. had left to pick up food and G.Z. was watching television in her room. Lopez-Martinez came into her room and pulled down her pants and underwear to her mid-thigh. He began touching her "tissue" with his fingers and then began licking her "tissue" with his tongue. G.Z. told Molina she was "grossed out." Lopez-Martinez stopped because he heard G.Z.'s brother return from school and open the front door. She recalled that time Lopez-Martinez told her not to tell M.Z., and she was "too scared to tell anyone" because "she thought they would make fun of her."

Molina testified G.Z. described a third incident that she thought happened when she was eight years old and in the fall. G.Z. remembered being on the sofa, reading a book, when Lopez-Martinez came and touched her on her "tissue" with his fingers. She got up and went to the bathroom to get him to stop.

G.Z. testified at trial to the same three incidents Molina described. She agreed M.Z. did not go to the police right away because G.Z. did not want her to. She stated she did not tell her father because she had seen her parents fight before and felt "none of this would have happened" to her had her father not left them.

**ANALYSIS**

Lopez-Martinez brings three issues on appeal. First, he complains the judgment incorrectly states he waived his right to appeal. Next, he asserts the evidence was insufficient to show the incidents of abuse occurred more than thirty days apart. Finally, he argues the trial court erred by allowing the State to ask leading questions of G.Z. We will address his substantive complaints first.

## I.      Sufficiency of the Evidence

Lopez-Martinez asserts the evidence does not support the finding that the incidents in question happened more than thirty days apart, as required by the continuous sexual assault statute. We review a sufficiency challenge by considering all of the evidence in the light most favorable to the verdict and determine, whether, based on the evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318—19 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). As the reviewing court, we defer to the jury in undertaking their responsibility to "'fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Williams v.*

*State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The Court balances this deference to the jury with our duty to ensure the evidence "actually supports a conclusion that the defendant committed the crime that was charged." *Williams*, 235 S.W.3d at 750. We resolve evidentiary inconsistencies in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person seventeen years or older commits the offense of continuous sexual assault of a child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than fourteen years of age. TEX. PENAL CODE § 21.02(b)(1). Lopez-Martinez does not dispute the evidence is legally sufficient to show both he and G.Z. were the required ages during the time period in question or that he committed "two or more acts of sexual abuse" against G.Z. *Id*. § 21.02(b)(1). He argues the evidence is legally insufficient to prove that he committed two or more acts of sexual abuse "during a period that is 30 days or more in duration." *Id*. We disagree.

G.Z. and Molina testified regarding three incidents of abuse and G.Z. stated all three incidents occurred when she was eight and nine years old. G.Z. recalled one incident occurred in November when she was eight years old, another occurred "in the fall," and the third incident occurred in "the spring." A reasonable juror could have inferred that the incidents occurred over a span of more than thirty days by G.Z.'s statements that one incident happened in the fall and one happened in the

spring. *See Williams*, 235 S.W.3d at 750. Moreover, the State "need not prove the exact dates of abuse, only that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE § 21.02(d). Although G.Z. was not specific as to her age at the time of each incident, it is the "province of the jury to resolve conflicts in the evidence, and the jury may reject any part or all of a witness's testimony in order to reconcile conflicts." *Pelcastre v. State*, No. 14-21-00449-CR, ——S.W.3d——, ——, 2022 WL 10208147, at *2 (Tex. App.—Houston [14th Dist.] Oct. 18, 2022, no pet. h.). Here, the jurors were informed of G.Z.'s date of birth and could have estimated when the abuse occurred from her date of birth and testimony that all three incidents occurred when she was eight and nine years old. Under this record, we conclude the evidence was sufficient to support the findings that Lopez-Martinez committed two or more acts of abuse over thirty days apart. We overrule this issue.

## II.    Witness Testimony

Lopez-Martinez next complains the trial court erred by allowing the State to elicit testimony from G.Z. through the use of leading questions. The State maintains the questions were not improper, similar evidence came in through Molina, and Lopez-Martinez did not preserve error on his second set of challenged testimony.

The Rules of Evidence generally prohibit leading questions on direct examination except where such questions may be necessary to develop the witness's testimony. TEX. R. EVID. 611(c). Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back to the prosecutor. *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Newsome v. State*, 829 S.W.2d 260, 269 (Tex. App.—Dallas 1992, no pet.). The mere fact a question may be answered with a "yes" or "no" does not cause it to be a leading question. *Newsome*, 829 S.W.2d at 269; *Rodriguez v. State*, No. 05-18-01448-CR, 2020 WL 881008, at *4 (Tex. App.—Dallas Feb. 24, 2020, no pet.) (mem. op., not designated for publication). It is only when the question suggests which answer is desired that it becomes a leading question. *Newsome*, 829 S.W.2d at 269. However, with a child witness, a trial court is given some leeway, and the rule against leading questions is somewhat relaxed. *Keller v. State*, 604 S.W.3d 214, 225 (Tex. App.—Dallas 2020, pet ref'd).

We review a trial court's decision to allow a prosecutor to lead a State's witness for an abuse of discretion. *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982); *Rodriguez*, 2020 WL 881008, at *5. Abuse of discretion cannot usually be shown unless a defendant can demonstrate he was unduly prejudiced by virtue of such question. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000).

Lopez-Martinez challenges the following extended exchange:

State:      Okay. Tell me about another time that you remember, and—sorry, let me ask you this: Was there ever a time that it happened where [Lopez-Martinez] touched you with something other than his fingers?

Defense:    Your Honor, I'm going to object to that leading question as well. It's been asked and answered, no, and I don't know, and now it's leading.

State:      It was not asked and answered.

Court:      Overruled.

State:      All right. [G.Z.], did he ever touch you with something different other than his fingers?

G.Z.        No.

State:      Did he ever use another part of his body to touch your body?

G.Z.        No.

. . . .

State:      Okay. Was there ever a time that he used his tongue on your private part?

Defense:    Your Honor, objection as to absolutely leading.

Court:      Sustained.

Defense:    And ask that that be struck from the record.

Court:      The jury will disregard the last question.

State:      Was there ever a time that he used something other than his hands on your body?

Defense:    Your Honor, objection—

G.Z.        Yes.

Defense:    —as to leading, again.

Court:    Overruled.

State:    You said, "yes"?

G.Z.        Yes.

Lopez-Martinez argues the previous exchange as a whole constitutes a leading question. We disagree and conclude that, to the extent some of the questions posed by the State were leading, they were necessary to develop the testimony of a scared, child witness. *See Keller*, 604 S.W.3d at 225. It was apparent throughout the testimony of G.Z. that, although she was emotional at times during her testimony,[3] she was able to articulate what had occurred in the three incidents she described and the State's questions did not create her version of events.

Lopez-Martinez also complains the State continued to ask leading questions when trying to clarify a time frame:

> State:    Okay. And so did all these times—or, sorry, did these times that he touched you, was that all in one month, or over several months?
>
> Defense:    And, Your Honor, objection as to asked and answered. This question—this witness has already answered inside of a month, and then she mentioned seasons.
>
> State:    She's a child. We're trying to clarify, Judge.

---

[3] G.Z. agreed during her testimony that she was having a "hard time answering" and required the State to give her tissues at one point, indicating she became emotional.

| | | |
|---|---|---|
| Court: | | Well, since she has—since those responses seem to be in conflict, I'll allow the question so we can get some clarification. |
| State: | | Okay. So when he would touch you with his fingers, was that all in one month, or was it during several different months. |
| G.Z. | | Several months. |
| State: | | Several months? |
| G.Z. | | Yeah. |
| State: | | Okay. And how do you remember that? How—you said that you were mostly eight; is that right? |
| G.Z. | | Yes. |
| State: | | Did it also happen when you were nine? |
| G.Z. | | Yes. |

Lopez-Martinez did not object to those additional clarifying questions asked by the State and, therefore, failed to preserve error concerning that exchange. TEX. R. APP. P. 33.1. Regardless, although the State asked questions that could be considered leading or bordering on leading, they were asked to help streamline the examination of a child witness testifying about traumatic events that had occurred years prior. *See Keller v. State*, 604 S.W.3d at 225; *Padilla v. State*, 278 S.W.3d 98, 106 (Tex. App.—Texarkana 2009, pet ref'd) (no abuse of discretion to allow State to ask young victim of sexual abuse leading questions where she had to be reminded more than once to speak louder, appeared reluctant to testify, had trouble

–11–

remembering events that occurred over a year before trial, and was emotional). We conclude the trial court properly permitted the questions Lopez-Martinez complains of on appeal because they helped clarify G.Z.'s previous responses.

Moreover, even if the trial court should have sustained objections to the State's questions, Lopez-Martinez is not entitled to reversal because similar testimony was admitted through Molina. His testimony concerning his interview with G.Z. included the same details provided by G.Z. at trial. Therefore, the evidence was before the jury before G.Z. testified and Lopez-Martinez cannot establish he was unduly prejudiced.

Under these circumstances, we cannot say the trial court abused its discretion or acted outside a zone of reasonable disagreement in allowing somewhat leading questions during the examination of G.Z. *See Keller*, 604 S.W.3d at 225. We overrule this issue.

## III. Modification of the judgment

In his first issue, Lopez-Martinez contends that the judgment in this case is incorrect where it contained the following finding under the "special findings" section: **APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED.** The State agrees with Lopez-Martinez that the judgment is incorrect.

When the trial court pronounced Lopez-Martinez's sentence, it stated: "I also need to advise you that you have the right to appeal the decision of the jury—the verdict of the jury, and if you cannot afford an attorney, an attorney will be appointed

for you." The trial court's certification of defendant's right to appeal states "I certify that this criminal case is not a plea-bargain case, and the defendant has the right of appeal."

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). When there is a conflict between the oral pronouncement of a sentence and the written judgment, the oral pronouncement controls. *Shuler v. State*, 650 S.W.3d 683, 686 (Tex. App.—Dallas 2022, no pet.) (citing *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)). When the oral pronouncement and the written judgment conflict, the remedy is to reform the judgment. *See Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). Under this record, we conclude the trial court did not find Lopez-Martinez had waived his right to appeal.

We sustain this issue and modify the judgment to remove "Appeal Waived. No Permission to Appeal Granted" from the special findings section of the judgment.

## CONCLUSION

Under this record, we conclude the evidence was sufficient to support a finding that Lopez-Martinez committed two or more acts of abuse during a period of more than thirty days as required by the statute, and the trial court did not abuse its discretion when allowing leading questions. Accordingly, we sustain Lopez-

–13–

Martinez's first issue, overrule his second and third issues, and affirm the judgment as modified.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).
210319F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCELINO LOPEZ-MARTINEZ,
Appellant

No. 05-21-00319-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas Trial Court Cause No. 199-83185-2020.
Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Appeal Waived. No Permission to Appeal Granted" is removed from the special findings section of the trial court's judgment.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of November, 2022.